UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRENDA DYE,

        Plaintiff,

v.                                   Case No. 5:20-cv-459-NPM

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____

**OPINION AND ORDER**

Plaintiff Brenda Dye seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 22), [1] and the parties filed a joint memorandum (Doc. 29). As discussed in this opinion and order, the decision of the Commissioner is affirmed.

## I.    Eligibility for Benefits and the Administration's Decision

### A.    Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death

---

[1] Cited as "Tr." followed by the appropriate page number.

or that have lasted or can be expected to last for a continuous period of not less than twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

## B.    Factual and procedural history

On June 25, 2018, Dye applied for disability insurance benefits and supplemental security income. (Tr. 222-234). She asserted an onset date of January 19, 2018, alleging disability due to the following: arthritis in spine; degenerative disc disease and stenosis; bad lumbar disc; pulmonary nodule; bilateral carpal tunnel

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 416.913(a)(2)(i)(A)-(D) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 416.945(b)-(d) (same), 404.1594(b)(4) (defining functional capacity to do basic work activities), 416.994(b)(1)(iv) (same).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

syndrome; limited use of right thumb; limited mobility due to spine issue; diabetes; rectal mass; trichomoniasis; and osteoarthritis of right thumb. (Tr. 250). As of the filing of Dye's application, she was 50 years old with a high school education and past relevant work as a small products assembler. (Tr. 58-59).

On behalf of the administration, a state agency[5] reviewed and denied Dye's application on August 20, 2018, and upon reconsideration on October 16, 2018. (Tr. 140-145, 149-160). At Dye's request, Administrative Law Judge (ALJ) Daniel Campbell held a hearing on August 21, 2019, to assess the merits of her application. (Tr. 38-63). On October 21, 2019, the ALJ issued an unfavorable decision finding Dye not disabled from January 19, 2018, through the date of the decision. (Tr. 15-31).

Dye's timely request for review by the administration's Appeals Council was denied on August 11, 2020. (Tr. 1-6). Dye then brought the matter to this court, and the case is ripe for judicial review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 23).

---

[5] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. §§ 404.1503(a), 416.903(a).

## C.    The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work; and (5) if not, whether, in light of her age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

> *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400. Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.*

- 4 -

(quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. §§ 404.1512, 416.912 (providing that the claimant must prove disability); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Dye had not engaged in substantial gainful activity since January 19, 2018, the alleged onset date. (Tr. 18). At step two, the ALJ characterized Dye's severe impairments as: cervical and lumbar degenerative disc disease; right carpal tunnel status post release; arthritis of the right

thumb status post arthroplasty; chronic pain disorder; anxiety; and depression. *Id.* At step three, the ALJ determined Dye did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 19).

As a predicate to step four, the ALJ arrived at the following RFC:

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can stand/walk in combination for four hours in an eight hour day and sit for six hours in an eight hour day. She can frequently handle, finger or feel and push/pull with the bilateral upper extremities. She can occasionally climb ramps or stairs but never climb ladders, ropes or scaffolds. She cannot work at unprotected heights or around moving mechanical parts. She is limited to the performance of simple, routine tasks with no more than occasional changes in a routine work environment. She can have frequent interaction with coworkers and supervisors but can only have occasional interaction with the public.

(Tr. 21-22).

At step four, the ALJ determined Dye was capable of performing her past relevant work as a small products assembler (DOT #706.684-022, light, SVP 2, unskilled). (Tr. 30). Consequently, there was no need for the ALJ to proceed any further. Nevertheless, and in the alternative, the ALJ found at step five that Dye could perform other work that exists in significant numbers in the national economy. (Tr. 30-31). In support, a vocational expert testified three occupations represent the kinds of jobs an individual with Dye's age, education, work experience, and RFC can perform:

- office helper (DOT #239.567-010, 74,000 jobs nationally);
- marker (DOT #209.587-034, 38,000 jobs nationally); and
- photocopy machine operator (DOT #207.685-014, 15,000 jobs nationally).

(Tr. 31).[6]

## II. Analysis

The issue on appeal is whether the ALJ properly evaluated statements made by a treating physician.

### A. Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is

---

[6] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

**B.    Whether the ALJ properly evaluated a March 5, 2019 letter authored by treating physician Dr. Downey.**

While Dye's application was pending and prior to the ALJ hearing, her treating physician, Dr. Tabatha Downey, ABFM, authored the following letter:

March 5, 2019

To Whom It May Concern:

My patient, Brenda Dye, has a severe chronic pain disorder due to cervical and lumbar disc disease. She is limited in daily activities and is unable to work on a sustained basis. This diagnosis has been confirmed through physical examination, medical history, neurological examination in addition, to radiology of the lumbar and cervical spine showing degenerative joint disease and narrowing of the spinal canal. Ms. Dye was diagnosed with Degenerative Joint Disease prior to joining the medical practice at Heart of Florida Health Center on September, 7, 2018.

Ms. Dye's symptoms include:

- Chronic fatigue
- Weakness
- Difficulty Remembering
- Depression
- Unstable walking for prolonged periods of time
- Pain

In my opinion, Ms. Dye is unable to resume any type of gainful employment due to physical impairment. Her fatigue, pain, weakness, and other symptoms will significantly and consistently interfere with work performance and attendance. Degenerative joint disease is a progressive disorder without a cure. My expectation is that Ms. Dye will see a continued decline in function over time, lasting longer than 12 months.

Sincerely,

Dr. Tabatha Downey, ABFM
Family Medicine

Dye argues that this letter contains medical opinions, and that the ALJ erred by not finding the opinions persuasive or adequately explaining why not. (*See e.g.*, Doc. 29, pp. 16-17 (stating "[Dr. Downey] provided opinions of functional limitations that were supported by medical evidence.")). But Dye's arguments fail to comport with the applicable regulations and must be rejected.[7]

The administration's regulations define "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions ...."

---

[7] Dye's reliance on *Schink* is misplaced because in that case the Eleventh Circuit analyzed whether an ALJ properly evaluated a medical opinion under the prior—and subsequently outdated—regulatory regime. *See Schink v. Comm'r of Soc. Sec. Admin.*, 935 F.3d 1245, 1259 n.4 (11th Cir. 2019).

20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Thus, statements from a physician that a claimant can never lift more than twenty pounds, cannot understand and follow complex instructions, cannot tolerate anything more than occasional interaction with the public, or any other comments about the extent to which a claimant can or cannot perform a work-related function are examples of "medical opinions" for purposes of a Social Security disability analysis. *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv), 416.913(a)(2)(i)(A)-(F).

None of the statements in Downey's letter assess the extent to which Dye can perform any particular function in a work setting, and so they do not constitute "medical opinions" for purposes of the applicable regulatory regime. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2); *see also Sepulveda v. Comm'r of Soc. Sec. Admin.*, No. 6:20-cv-1300-DNF, 2021 WL 4272981, *4 (M.D. Fla. Sept. 21, 2021) (affirming the denial of benefits because the ALJ properly evaluated the treating physician's opinion as to limitations caused by degenerative disc disease of the cervical, thoracic, and lumbar spine under the current regulatory regime.). Contrary to Dye's point of error, the ALJ was not required to assess anything in this letter for its persuasiveness or offer any reason for not finding its contents persuasive. *See* 20 C.F.R. § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions … in your case record."); *see also* 20 C.F.R. §416.920c(b) (same). Rather, the ALJ only needed to consider such material,

which he did. *See* 20 C.F.R. § 404.1520(a)(3) ("We will consider all evidence in your case record when we make a determination or decision whether you are disabled."); *see also* 20 C.F.R. §416.920(a)(3) (same).

Moreover, Downey's observations that Dye is "unable to resume any type of gainful employment," "unable to work on a sustained basis," and that her "symptoms will significantly and consistently interfere with work performance and attendance," are simply other ways of stating that Dye is disabled or not able "to perform regular and continuing work." 20 C.F.R. §§ 404.1520b(c)(3)(i), 416.920b(c)(3)(i). But that is for the ALJ to decide. *See* 20 C.F.R. § 404.1546(c) ("the administrative law judge … is responsible for assessing your residual functional capacity"); *see also* 20 C.F.R. § 416.946(c) (same). And the regulations therefore state that the administration "will not provide any analysis about how we considered such evidence" because it "is inherently neither valuable nor persuasive to the issue of whether [the claimant is] disabled … under the Act." 20 C.F.R. §§ 404.1520b(c), 416.920b(c).

Finally, and notwithstanding Dye's arguments to the contrary, Downey's reference to "unstable walking for prolonged periods of time" is a comment about Dye's medical history and not a medical opinion. *See* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Even if Downey had offered this statement as an opinion about what Dye can or cannot do in a work setting, it is no more specific than the general observation that Dye experiences "pain," which has almost no utility for the process

of determining an RFC. Nevertheless, the ALJ limited Dye to jobs that involved standing or walking for four hours or less in an eight-hour workday. (Tr. 21-22). So, in sum, there is no reversible error to be found in the ALJ's treatment of the March 5, 2019 letter from Downey.

## III.    Conclusion

Upon consideration of the submissions of the parties and the administrative record, the court finds substantial evidence supports the ALJ's decision. Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment, terminate any pending motions and deadlines, and close the case.

**ORDERED** on March 31, 2022.

Nicholas P. Mizell

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE